RECEIVED
IN ALEXANDRIA, LA.
MAY 24 2010
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| JAIMIE McCANN (DOC #172093) | CIVIL ACTION NO. 1:09-cv-2232 |
| VS. | SECTION P |
| | JUDGE DEE D. DRELL |
| WINN CORRECTIONAL CENTER, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

**IMPORTANT NOTICE**: COURTESY COPIES OF DOCUMENTS YOU FILE SHOULD **NOT** BE PROVIDED TO ANY JUDGE.
ALL COMMUNICATIONS WITH THE COURT SHALL **ONLY** BE THROUGH DOCUMENTS FILED WITH THE CLERK OF COURT.

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Jaimie McCann, proceeding *in forma pauperis*, filed the instant civil rights complaint (42 U.S.C. §1983) on December 28, 2009. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (DOC). He is incarcerated at the Elayn Hunt Correctional Center, St. Gabriel, Louisiana, but when he filed his complaint he was confined at the Winn Correctional Center (WNC), Winnfield. He complained of inadequate medical care and the denial of his right of access to the courts and sued a number of prison officials.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE.**

### Background

### 1. Original Complaint [Doc. #1]

Plaintiff's original complaint provided few facts in support of his claims for relief. Plaintiff alleged that "they got me blocked from [the mail] and legal system." He also alleged that his "brain and nerves will never be the same, I always have to take medicine." He then complained that he was in need of Klonopin® (to treat his seizure disorder), Soma® (to treat TMJ), Ritalin® (to treat ADD) and Percocet® (to treat migraine headaches).[1] He prayed for an order directing the defendants to

---

[1] Klonopin® or clonazepam is in a class of medications called benzodiazepines. It works by decreasing abnormal electrical activity in the brain and is used to control certain types of seizures. Soma® or carisoprodol, is a muscle relaxant, and is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. Ritalin® or Methylphenidate is used as part of a treatment program to control symptoms of attention deficit hyperactivity disorder (ADHD; more difficulty focusing, controlling actions, and remaining still or quiet than other people who are the same age) in adults and children. Methylphenidate is in a class of medications called central nervous system (CNS) stimulants. It works by changing the amounts of certain natural substances in the brain. Percocet® is a drug combining acetaminphen and oxycodone and is used to relieve moderate to severe pain. Oxycodone is in a class of medications called opiate (narcotic) analgesics. It works by

2

permit him access to the courts and the mail.

### 2. First Amended Complaint [Doc. #5]

On February 18, 2010 the plaintiff was directed to amend his complaint to provide more specific information. [Doc. #4] On March 1, 2010 plaintiff amended his complaint.

Plaintiff alleged that he was confined to the "blocks" where prisoners are not allowed to "mail your own mail." He claimed that he was confined to the "blocks" as a result of an incident where he was beaten by a corrections officers and then charged with a disciplinary rules violation.

He claimed that he was being denied access to the courts. He claimed that he was wrongly convicted of the disciplinary rules violation and that resulted in the forfeiture of 54 days of good

---

changing the way the brain and nervous system respond to pain. Medline Plus, A Service of the U.S. National Library of Medicince and the National Institutes of Health, Drugs & Supplements at
http://www.nlm.nih.gov/medlineplus/druginformation.html

TMJ or temporomandibular joint and muscle disorders are problems or symptoms of the chewing muscles and joints that connect the lower jaw to the skull. ADD or attention deficit disorder is a problem with inattentiveness, over-activity, impulsivity, or a combination of those conditions. Migraine is a common type of headache that may occur with symptoms such as nausea, vomiting, or sensitivity to light. In many people, a throbbing pain is felt only on one side of the head. Id., Encyclopedia at
http://www.nlm.nih.gov/medlineplus/encyclopedia.html

time. He also complained that he was not afforded medication in the blocks. He concluded by praying for his medicine, for the return of his good time credits and the refund of $10 that he was ordered to pay as restitution for medical costs and that he be released from the "blocks" and returned to the mental health tier. He also requested $150,000 in damages from Warden Morton, DOC Secretary James LeBlanc, Warden Tim Wilkerson, Inmate Shawn (Sean) Dillard, and Dr. Checkoff (Pacheco).

Plaintiff also provided copies of the WNC Disciplinary Report charging him with an aggravated fight between plaintiff and inmate Sean Dillard. [Doc. #5, p. 8] He also provided a copy of the decision rejecting his appeal of the disciplinary hearing. According to the latter document,

> On 12-5-2009, while Supervisor Knight was reviewing surveillance tapes, he observed you and inmate Dillard involved in an altercation. You were both restrained and placed on PHD pending disciplinary infractions.
> On 12-8-2009, you appeared before the board, requested no witnesses nor presented any evidence on your behalf. The report is clear and precise and the officer's statement was deemed more credible. You were found guilty of the charge with penalties imposed of Custody change to max status/WCB and 54 days forfeiture of good-time. $10.00 restitution was imposed for medical costs.
>
> By your own admission you were fighting with inmate Dillard but that you had a reason. There is no justified reason for inmates to fight. [Doc. #5, p. 9]

**3. Second Amended Complaint [Docs. #6 and 8]**

On March 3, 2010 plaintiff submitted two documents. Among other things he alleged that unidentified prison officials "have all my legal mail locked up in my property and I can't get them to give it to me." He claimed the Warden ordered these individuals to provide plaintiff with his legal papers, but plaintiff received a "bunch of junk." He also accused unnamed corrections staff of reading his "legal mail" because they "brought it to [him] opened."

Plaintiff then requested that LDOC Secretary James LeBlanc be dismissed from this suit and thereafter he named the following defendants – Warden Morton, Warden Wilkinson and Dr. Recheok [Pacheco].

### 4. *Third Amended Complaint [Doc. #9]*

On March 25, 2010 plaintiff filed yet another complaint. In this pleading he named the following defendants: Dr. Checkoff (Pacheco), Warden Morton, Warden Wilkinson, and Shawn Dillard. He prayed for "full medical and dental treatment at no cost to him" and $150,000 for pain and suffering and $150,000 for mental anguish. He again complained that someone, possibly his Unit Manager, Dean Bal, is opening his legal mail. He further alleged that he arrived at WNC on October 11, 2009 and that he was examined by Dr. Checkoff (Pacheco) on October 15, 2009. This

physician prescribed Klonipin®. According to plaintiff he experienced one seizure at WNC and the dosage was increased. Later, plaintiff advised the physician that he suffered from TMJ, ADD, and migraine headaches and that he was previously provided Soma®, Ritalin® and Percocet® for these conditions.

He indicated that during a prior confinement with the LDOC approximately ten years ago, his medications were discontinued and he suffered serious side effects. Apparently at this time, plaintiff continues to receive Klonipin® but not the other medications. He also claimed that the physician now refuses to treat plaintiff. He again prayed for $150,000 in damages and $150,000 for mental anguish and, he prayed that Shawn Dillard be returned to the "cell blocks."

### 5. Fourth Amended Complaint [Doc. #11]

In his fourth and final amended complaint plaintiff alleged that he was examined by Dr. Pacheco on November 12, 2010 [sic] and "Dr. Pacheco had to put me on the Klonipin [because] I was in such bad shape coming from [Forcht-Wade] where they gave me no medication." He claimed that Pacheco prescribed 12 mg. of Klonipin and that this drug therapy eliminated the seizures.

According to plaintiff, Dr. Wheat, the mental health physician, refused to provide plaintiff with Ritalin for his ADD

and dyslexia.

Plaintiff met with Mrs. Kennedy, a mental health care provider at WNC, on October 12, 2009. She obtained a history from plaintiff. When he went to pill call, he was given medication that he was unable to identify. He took the medication believing that the pills came from Forcht-Wade. Approximately two weeks later plaintiff was asked by Kennedy to sign a receipt for the pills. She provided Risperdal and Celera.[2] He discovered that one or the other of these drugs caused him to "stink" and to have gas. In any event, Kennedy moved plaintiff to the mental health tier without consulting him. Plaintiff submitted a grievance.

When Kennedy found out about the grievance she became angry and yelled at plaintiff. He returned to the mental health tier where things went well until he had the confrontation with Shawn

---

[2] Risperdal® or risperidone is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions) in adults and teenagers 13 years of age and older. It is also used to treat episodes of mania (frenzied, abnormally excited, or irritated mood) or mixed episodes (symptoms of mania and depression that happen together) in adults and in teenagers and children 10 years of age and older with bipolar disorder (manic depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). Risperidone is in a class of medications called atypical antipsychotics. It works by changing the activity of certain natural substances in the brain.

It is assumed that plaintiff means Celexa® or citalopram a medication used to treat depression. Citalopram is in a class of antidepressants called selective serotonin re-uptake inhibitors (SSRIs). It works by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance. Medline, Drugs & Supplements.

Dillard.

Plaintiff alleged that contrary to the disciplinary reports and findings, Dillard was the aggressor and plaintiff the victim of his aggression.

According to plaintiff, he remained in the cell blocks because Kennedy advised the warden that plaintiff has anger management problems. Even though he was ultimately released on March 24, 2010, he faults Ms. Kennedy for trying to keep him in the cell blocks.

Plaintiff claimed that it was during his time in the cell blocks that he discovered that the medication provided by Kennedy was causing him to "stink" and thereafter he refused the medication.

### Law and Analysis

#### 1. Screening

Plaintiff has been allowed to proceed *in forma pauperis*. When a prisoner sues an officer or employee of a governmental entity in a civil rights complaint, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C.§1915(e)(2).

Ali v. Higgs, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. Booker v. Koonce, 2 F.3d 114, 115 (5th Cir.1993); see, Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. Wilson v. Barrientos, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not

simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d at 97.

Plaintiff's complaints and exhibits provide the facts necessary to conduct and conclude a preliminary screening pursuant to §1915. No further amendment or supplementation of the record is necessary.

## 2. Plaintiff's Claims for Relief and Defendants

Plaintiff has filed five complaints. In the original complaint plaintiff complained of a denial of access to the courts and a denial of appropriate medical care and treatment. He named WNC, Dr. Pacheco, and LDOC Secretary LeBlanc as the defendants. [Doc. #1]

In his First Amended Complaint he complained again that he was being denied his right of access to the courts. He also complained that he was wrongfully convicted of a prison disciplinary charge which resulted in the loss of good time credits. He sued Warden Morton, Secretary LeBlanc, Warden Wilkinson, inmate Shawn (Sean) Dillard, and Dr. Pacheco. [Doc. #5]

10

Plaintiff's Second Amended Complaint alleged interference with his mail and a denial of access to the courts. Plaintiff dismissed Secretary LeBlanc from the suit and named only 3 defendants – Wardens Morton and Wilkinson and Dr. Pacheco. [Docs. #6 and 8]

In his Third Amended Complaint plaintiff sued Wardens Morton and Wilkinson, Dr. Pacheco, and inmate Dillard. He implied that he received inappropriate medical treatment. [Doc. #9]

In his Fourth Amended Complaint he faulted Dr. Wheat and Mrs. Kennedy for providing inappropriate treatment for his various mental and physical conditions. He also faulted Kennedy for keeping him in the "cell blocks." [Doc. #11]

### 3. Access to Courts/Mail

Plaintiff implies that he has been denied his right to access the courts. "It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." Jones v. Greninger, 188 F.3d 322, 325 (5th Cir.1999). See Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." Id. (citing Lewis v. Casey, 518 U.S.

11

343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Brewer v. Wilkinson, 3 F.3d at 821; Lewis v. Casey, 518 U.S. at 351, 116 S.Ct. at 2179-81; Norton v. Dimazana, 122 F.3d at 290; and Eason v. Thaler, 73 F.3d 1322, 1329 (5th Cir.1996). Plaintiff has been unfettered in his ability to litigate the instant lawsuit. As shown above, he has been permitted to file an original complaint and four amended complaints. In addition, plaintiff has litigated at least two other complaints during the period from December 2009 to the present. In McCann vs. Clerk of Court, No. 1:09-cv-2010, he filed an initial complaint, exhibits, and a motion to proceed in forma pauperis; likewise in McCann vs. LeBlanc, et al., No. 5:09-cv-1958 he was permitted to file an original complaint, exhibits, a motion to proceed in forma pauperis, and an amended complaint. His conclusory and self-serving allegations concerning interference with the mail and consequently, his right of access to the courts are clearly unsupported by the record.

Furthermore, in order for plaintiff to state a claim that he

was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." Lewis, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. The Court further held that this right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.*

Plaintiff has not shown that he sustained any actual injury resulting from the circumstances he complained about. Further, the record herein clearly establishes that plaintiff was not inhibited from transmitting and filing pleadings to this Court.

In short, Plaintiff's access to court claim should be dismissed as frivolous.

### 4. *Wrongful Disciplinary Conviction*

Plaintiff complains that he was wrongfully charged, convicted, and punished for a disciplinary violation. According to plaintiff, he was sanctioned with the loss of 54 days of good time credits and with confinement to the cell blocks for a period of time. He has not specifically requested reinstatement of the good time credits that were forfeited as a result of his prison disciplinary conviction.[3] However, he implied that he was entitled to a declaratory judgment and money damages as a result of the conviction and sanctions. A claim for declaratory judgment or damages arising from the loss of good time credits is not cognizable until a prisoner can show that the challenged disciplinary action has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized tribunal, or called into question by a federal court's issuance of a writ of

---

[3] Of course, plaintiff may not challenge his loss of good time credits in a civil rights action. See Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir.1998) (*en banc*). The restoration of forfeited good time credits must be pursued in a *habeas corpus* action filed pursuant to 28 U.S.C. §2241. See Preiser v. Rodriquez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). A *habeas corpus* action must be filed in the district court where the prisoner is in custody, and, the proper respondent in such action is the person exercising custody over the prisoner. See 28 U.S.C. §§ 2241(d) and 2243.

14

*habeas corpus*. See <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (When a prisoner seeks damages in a civil rights suit, the district court must consider whether judgment in favor of prisoner would necessarily imply the invalidity of his conviction or sentence; if so, the complaint must be dismissed unless prisoner can demonstrate that conviction or sentence has already been invalidated.) Plaintiff claims that the prison disciplinary charges filed against him were fabricated and are false.

The Supreme Court extended <u>Heck</u> to prison disciplinary cases in <u>Edwards v. Balisok</u>, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (A "conviction" for purposes of the <u>Heck</u> analysis includes a ruling in a prison disciplinary proceeding that results in a change in the prisoner's sentence, including loss of "good time" credits.) A prisoner's civil rights "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Id*.

According to the Incident Report and the disciplinary hearing officer's findings, plaintiff was either the aggressor or a

15

voluntary participant in the fight. He claims that those charges are false. Thus, a judgment in plaintiff's favor in this civil rights lawsuit would necessarily call into question the validity of the disciplinary hearing and the ultimate loss of good time credits.

Since plaintiff has not shown that his disciplinary conviction has been reversed, expunged, declared invalid, or called into question, his claims for money damages must be dismissed with prejudice as frivolous. <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir.1996).

### 5. *Medical Care*

Plaintiff also faults Dr. Pacheco, Dr. Wheat and Mrs. Kennedy for providing inadequate medical care with regard to his various physical and mental conditions.

To state a cause of action for inadequate medical care, a prisoner needs to show deliberate indifference to a serious medical need, which constitutes the unnecessary and wanton infliction of pain that is proscribed by the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

A delay in medical care can only amount to an Eighth Amendment violation if there has been a deliberate indifference, <u>resulting</u>

16

in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993) (emphasis supplied).

Plaintiff's complaints do not assert deliberate indifference on the part of any of the defendants. At best, plaintiff has shown that the defendants were negligent in their treatment of his various disorders. However, a complaint alleging negligence in diagnosis or treatment does not state a constitutional claim. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir.1999). Otherwise, plaintiff has shown only that he disagreed with the health care providers' diagnosis and treatment plans. However, a plaintiff's disagreement with diagnosis or treatment likewise does not establish deliberate indifference. See Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir.1991); Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir.1985).

### 6. State Actor

Finally, plaintiff sues his fellow inmate, Mr. Dillard. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by
the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S.Ct.

2250, 101 L.Ed.2d 40 (1988).[4] The "under-color-of-state-law" element of § 1983 excludes from its reach "'merely private conduct, no matter how discriminatory or wrongful,'" Blum v. Yaretsky, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoting Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), cited in American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999).

Plaintiff has not shown that inmate Dillard was a "state actor," that is operating under color of state law. (Under the "color of law" requirement, the defendants in a § 1983 action must have committed the complained-of acts in the course of their performance of duties and have misused power that they possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. United States v. Classic, 313 U.S. 299, 325 (1941); Screws v. United States, 325 U.S. 91, 110 (1944)(plurality opinion). Therefore, his

---

[4] Section 1983 provides in pertinent part, "Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983.

claims against Dillard are frivolous.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint asserting the unlawfulness of his prison disciplinary conviction and the sanctions imposed be **DISMISSED WITH PREJUDICE (TO BEING ASSERTED AGAIN UNTIL THE HECK CONDITIONS ARE MET)** as frivolous in accordance with the provisions of 28 U.S.C. §1915(e)(2)(B); and,

**IT IS FURTHER RECOMMENDED THAT** plaintiff's civil rights complaint alleging the denial of medical care, the right of access to the Courts, and all claims against inmate Dillard be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this**

19

Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Alexandria, Louisiana May 24, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE